Thank you so much. Mr. Egberin, am I pronouncing your name right?  Good morning, Your Honor. Good morning. Nitor Egberin. I'm sorry, you have reserved two minutes, right? Yes, I do. Okay. Please, when you're ready. Thank you so much. May it please the court, my name is Nitor Egberin, I represent Mr. Maybe you should lift the microphone or the desk, you're very tall. Thank you so much, Your Honor. Joe, can you help him raise the podium? Raise the desk. Is this good enough? Thank you. Thank you so much, Garcia. When I was up there, I always had to go in the other direction. Thank you for making me comfortable, Your Honor. Please. I represent Mr. Siasia against FIFA. We believe, Your Honor, that there is in the record sufficient context for the court to have not ruled the way it did. We believe that FIFA has significant activities in New York. We've set forth that in Mr. Siasia's affidavit in the appendix, which was part of the record. I do not wish to go into detail about those activities. They are in the brief and in the appendix. Well, counsel, may I ask, on the theory of general jurisdiction, there's a little bit of a shift, I think, from the argument below to the argument now. Argument below is premised on FIFA's contacts in New York prior hosting of the World Cup, future hosting of the World Cup, et cetera. Argument now, as I understand it, is an agency theory or parent subsidiary theory that U.S. soccer has sufficient contacts to be at home in New York, and those can be imputed to FIFA as the parent. Do I understand the nature of the argument being made now? Thank you, Your Honor. We're sorry that the theories have somewhat changed or the arguments have changed. The argument is that FIFA consists of 21 of 211 national association members. They are FIFA, and FIFA, that body itself, acts through its members in each country. And why isn't that argument essential, and therefore FIFA is at home based on them? Why isn't that argument just squarely foreclosed by the Daimler decision? Well, it isn't, Your Honor. We thought it did. The Daimler AG decision talks about the paradigm cases for individuals, which would be that individuals place. What decision? Daimler. Oh, you're saying Daimler. Okay, I'm sorry. Go ahead. I understand. Is that the same, Your Honor? Yes. The Daimler AG decision said for that, including the Goodyear decision. In your 28-J letter, you mentioned a decision in 1984, and that, of course, is interesting. But that's before Daimler. And isn't that really the difference? Before Daimler, we might well have said the connections are enormous. But after, how can we say that? That's correct, Your Honor. Well, Daimler talks about where a corporation is at home or where an individual is at home. FIFA is neither an individual or a corporation. FIFA is a partnership of the national associations. The national associations, and that's what the 10th Circuit Court case is about, where the national associations, the members of FIFA in that case, were carrying out FIFA's activities in their various countries. So can I ask, what is the legal distinction between agency, association, or what you're calling an international corporation with members? Do we analyze this closer to agency theory? How are we supposed to disentangle this very specific niche that you are claiming that FIFA operates in? Thank you, Your Honor. So the first thing is to understand what FIFA is. FIFA is not a corporation. FIFA is like a cartel. FIFA is like OPEC. FIFA is like the United Nations. FIFA is not a corporation. Yes, but in terms of the agency relationship to U.S. soccer, why does that make a difference? Why does that make a difference in terms of the reasoning of things? Thank you so much, Your Honor. So the Donatelli case, which I cite in my reply brief, tries to analyze that issue. In other words, in a situation of an alter ego agency scenario, then U.S. soccer is not really independent. U.S. soccer is actually the alter ego of FIFA. So it's a better agency argument than the ninth-second case argument in Daimler-Chrysler, which the Supreme Court said the agency theory was loose. In this case, we're saying that FIFA, U.S. soccer, is the alter ego of FIFA. So can FIFA direct U.S. soccer to close up shop? Absolutely. Where is that in the record? Part of the struggle I'm having is that I can imagine scenarios in which there might be enough of an entanglement to support an agency theory, but I'm not seeing it argued. I'm not seeing where in the record you have answered all those questions and made those potential hypotheticals come true. Can you help me out there? So in the CSS affidavit in appendix 201 forward, he cites FIFA's own data from FIFA's website, where FIFA says it governs and regulates football around the world and that it does so through its representatives, U.S. soccer being one of them, and that U.S. soccer and those representatives are bound, they're obligated, and I believe that's in the appendix 200. So we're supposed to intuit that it governs it, that it meets the standards for agency from that. That's correct. But if that were so, then why the whole procedure that went on that couldn't have been appealed in Switzerland That is, if it really is that FIFA isn't there at all, but it's always U.S. soccer, then one wouldn't have expected U.S. soccer to be involved before. Absolutely. There's something a bit odd about saying this ain't an agent, an entity at all, and at the time after that has all been litigated for a very long time, suddenly to say we wasn't there at all. Well, thank you so much, Your Honor. FIFA should have deferred to the U.S. Soccer Federation which issued the license for Mr. Siasia. FIFA did not do that. FIFA thought the Nigerian Football Federation And if that is so, isn't that something akin to judicial estoppel? I didn't hear that, Your Honor. Since they took that position, it's kind of late in the day to take a different one, and there is a doctrine of judicial estoppel that says if you take a certain position, you're later not able to deny it. Well, FIFA made a mistake in thinking that Nigerian Football Federation was the right agent to communicate with when FIFA should have communicated with the U.S. Soccer Federation. So FIFA made a mistake there. In fact, well, there are other cases pending right now where U.S. Soccer Federation is in charge of those disciplinary type activities, not FIFA. So there is an agency, but in terms of... We do have a stronger argument for specific jurisdiction because the contacts are significant and according to the case law in this circuit, any element of CSS causes of action that relates to any of those activities are sufficient for finding the... But nothing happened in New York related to the claim. What happened in New York is the fact that the license was issued by New York. Well, it was issued by an entity that is incorporated under New York law but is in Chicago to Mr. Siasa who was in Atlanta, as I understand it. That's correct. New York laws authorized that entity. Without New York laws, that entity would not exist. Right. That seems to just kind of dovetail back into your agency's theory of general jurisdiction because, again, what happened here from which this lawsuit arises? What happened here was activities that occurred in Atlanta and I turned by some football agent to have my clients be employed in a club in Australia. So it was communication online or by telephone. Okay. So maybe I can ask the question a different way. So the way I understand it is you have what FIFA did and FIFA sent the notices about the bribery charge, and so that, you don't dispute, didn't happen in New York. But then there's also the issue of the license. You are saying that as a court we're supposed to presume that there is some sort of New York connection because U.S. Soccer is incorporated in New York. Do you have anything tying the issuing of that license to New York? That's all we have. Did you request jurisdictional discovery? We didn't, Your Honor, and we should have, but we did not. And that's all we have in terms of New York activity in terms of the license issuance, in terms of U.S. Soccer being in New York. Mr. Siasa lives in Atlanta, and the communication accord in Atlanta, but his license is in New York. Okay. Do I have any other questions? Okay. Thank you so much. Thank you. And then Mr. Friedman, we'll hear from you. You've got 10 minutes. Good morning, Your Honors. David Friedman of Paul Weiss for Appellee FIFA. May it please the Court. The district court correctly held that it lacks personal jurisdiction over FIFA. This suit challenges a FIFA ethics investigation and proceeding that occurred entirely in Switzerland. It concerned emails sent between the appellant in Georgia and an individual arrested in Finland, discussing a scheme involving an Australian football team. That's all very well. No problem with that. But the argument that now has been made and that Judge Hellerstein didn't focus on was U.S. Soccer. So just right for that. So on the U.S. Soccer issue, whether it's under general jurisdiction or specific jurisdiction, we don't think there can be an agency theory of jurisdiction over FIFA here. This is not even a parent sub-situation. Conclusory terms like partnership or cartel don't get appellant there. FIFA is the international governing body of soccer. U.S. Soccer is one of the member associations. I'm sorry, can you answer, can FIFA direct U.S. Soccer to close up? If FIFA can direct U.S. Soccer to close up, I don't know the answer to that. That would be legally significant, right, in terms of agency. Well, I think. I mean, you've conceded or at least there's evidence in the record that it provides financial support to U.S. Soccer, right? So that's one of your bad facts, right? Another bad fact is that it governs it, right? So we now need to explore the facts that may not be well established, and one of them is closing up shop. So I don't know if FIFA can wholesale close up shop. I think there would have to be some sort of proceeding. U.S. Soccer is an independent body. It independently regulates soccer or football in the United States. What is there on the record that would suggest that kind of relationship? Because ultimately the question is, you know, they have to prove jurisdiction. So what is there in the record that would lead us to say that U.S. Soccer is an agent because they can be closed up? Is there anything in the record or not? Or am I wrong on whose burden it is? Judge Calabresi, I think that's exactly right. I think there's nothing in the record, and I think, if anything, the record supports that they are independent actors. I think as Appellant admitted, and this is clear in the record, FIFA's member associations, the individual member associations could have brought their own disciplinary proceedings here. They didn't. That's in Appendix 115, Paragraph 206 of the Court of Arbitration of Sport Decision. Notably, at the Court of Arbitration of Sport, the Appellant argued that this convict should have been investigated by the Confederation of African Football or the Nigeria Football Federation, not U.S. Soccer. And Appellant, I believe, just said and affirmatively alleges in his complaint that FIFA did not even turn over to U.S. Soccer the underlying emails that were the subject of the disciplinary proceeding, the ethics investigation. Well, right, but the argument isn't that U.S. Soccer does all that FIFA does. The argument is that U.S. Soccer is effectively FIFA in here. And I guess one of the questions would be if U.S. Soccer did close shop, would FIFA come in and step in and do all the work that U.S. Soccer is doing? I don't believe so. I believe that the way FIFA runs is it's the international body. And there are these member nations and the member nation federations are responsible. I'm less interested in belief. I'm interested in what is on the record as to these things and on whose burden it is on the record. I mean, you can believe what you want and our counsel can believe what they want. And again, Judge Palgrazi, that's exactly right. I think it is plaintiff's burden. There's nothing in the record, as Judge Nathan pointed out. The theory has shifted since the district court decision. Yeah, what's on the record is what FIFA did in New York. Correct, which is nothing related to the claims that the appellant brought. And what FIFA did in New York is, I think, plainly not sufficient for general jurisdiction. Correct. It's the sort of sporadic contact that I think this court in multiple decisions pre and post Daimler has confirmed does not give rise to general jurisdiction. So what you're saying now is it might be that a case could be made that U.S. soccer was an agent and therefore there would be general jurisdiction, but that that case has not been made in this case. And just to caveat that, I'm not sure post Daimler, the sort of facts that could give rise to… Yeah, no, no. I'm not saying it might be made, but no, we're not there because not even that might has been done. Correct. It is certainly not this case. And I think Daimler expresses serious concern even with that kind of… Yeah, I mean, Daimler says even assuming the subsidiary's contacts are imputable to Daimler, there would still be no basis to subject Daimler to general jurisdiction in California. For Daimler, some contacts with the State hardly render it at home. Right. That's exactly right, Judge Nathan. And I think, you know, when the Daimler decision notes that the Ninth Circuit's agency theory, which was on a much stronger agency theory than anything in the record here, would appear to subject foreign corporations to general jurisdiction wherever they have an in-State subsidiary or affiliate, that would be precluded by prior precedent, including Goodyear. That's effectively the thrust of the allegation here. You have, and I don't want to use the word agent because I don't think there's been any allegations of agency, but you have a member association of this international government body that's incorporated here, is not alleged to have done anything here. And that incorporation is essentially being used as a hook for general jurisdiction. We don't think that's enough. I have two questions. So one is, would you agree that the district court, in its opinion, by concluding that there was no general jurisdiction and being very terse about not incorporated and not headquartered, is not an accurate representation of the law? Certainly if one were incorporated or there were headquartered, it would be an easy question, but it's not foreclosing all situations in which there may be claim for general jurisdiction. We don't need to go as far as the district court did to side for you. I think the Supreme Court has recognized that there is the exceptional case where there can be general jurisdiction. I think that is far from this case. I think the sort of canonical example, I believe, is Perkins. In other words, you agree that the district court erred in how it dealt with this case, but you say you win anyway. That's right. So we have to apply pleadings and affidavits construed in the light most favorable to him, and he doesn't have to prove jurisdiction. He just has to make a prima facie case of jurisdiction. So I'm interested in why statements made on the FIFA website about its regulations of member associations, not enough for us to decide that this case at least needs to go to discovery. So I do want to talk about that statement. It's at 202 of the record. I believe it says, as representatives of FIFA and their countries, they have obligations to respect the statutes, aims, and ideals of football's governing body and promote and manage our sport accordingly. I don't think that statement alone by FIFA can give rise to an agency relationship. I don't think it doesn't, by that statement alone, suggest that anything U.S. soccer does... Even construing it in the light most favorable to the plaintiff? I believe so. I think... What evidence did you offer disputing that FIFA does not have financial support, does not control their memberships, does not allow them to direct them to closed shop? Where's your best information? Because right now, if the information is equal, you're out of luck. So, Judge Perez, I think to make a pleading of agency, the appellant would need to plead that the defendant was a primary actor in a specific matter in question and that control cannot be shown based on conclusory allegations of defendant controls affiliate or defendant controls agent. They would need to plead that U.S. soccer engaged in acts with FIFA's knowledge and consent and that FIFA exercised control over U.S. soccer as to those acts. I don't think we have anything at all meeting that pleading burden. I think what we have here is essentially a statement on the website saying these associations are bound to follow FIFA rules. And I think if that were enough to be an agency relationship, you'd have agency relationships in all sorts of contexts where not normally known to exist. And you would always find, for example, that an in-state subsidiary, an in-state affiliate was acting on behalf of a corporate parent or an affiliated entity in the corporate structure because there's always going to be some ability to allege that you have to follow the parents' rules or there's some sort of level of potential control. And I think actually in Daimler, the Supreme Court cast significant doubt on, for example, the agreement, the distribution agreement, I believe it is, between the parent and the distributor, which gave the parent the right to oversee the distributor as sufficient to— that there shouldn't be discovery of jurisdiction. That is, if we're talking about the outlying parts of Daimler, then I think more needs to be done. The question is, is this, on what there is, sufficiently clear under Daimler so that even going to discovery is not justified? I don't think—and as Apollon admitted, he did not ask for jurisdictional discovery, nor has he articulated, I think, facts to get there. I think it's just been legal conclusions. I don't think that's enough. Thank you so much. Mr. Edburn, you've got two minutes. Thank you, Your Honor. Yes, so the record, the Appendix 202, clearly states that FIFA regulates U.S. suffragette duration. Appendix 212, which is the ethics code of FIFA, applies to U.S. suffragette duration. All the members of U.S. suffragette duration, the committees, the court, and FIFA could actually impose a lifetime ban on U.S. suffragette the same way it did on Mr. Ciacia. Counsel, did you below argue to the district judge that that evidence is sufficient to make your showing under this theory of general jurisdiction? I mean, as I see it, I think the whole battlefield below was about FIFA's connection. So this is not part of the record—I mean, it's in the record, but it's not part of what you argued in support of a theory of general jurisdiction. The other side, therefore, didn't have an opportunity to respond on that theory, and the district court didn't address that theory. But tell me if I've got that wrong. No, you're correct, Your Honor. The record was not fully fleshed out in the response to the motion to dismiss. The response focused on the activities of FIFA, even though in the record there were these other facts that were not fleshed out. That's correct. There are no further questions. We will take this case under advisement. Thank you.